CASH *v.* WHITWORTH and POAG.—WHITE *v.* Same.

13  401
45  423

13  401
51  1407

13  401
120  165

A proprietor is not bound to yield a part of his soil for the construction of a levee, which originally was not required to protect his own land from inundation, but which was rendered necessary by closing a bayou in order to reclaim swamp lands belonging to the State, or to others.

A divestiture of vested rights may be effected, not only by a change or destruction of the title to the property, but also by a destruction of the property itself.

APPEAL from the District Court of the parish of Caddo, *Creswell,* J.

*Crain & Nutt,* for plaintiff.   *Land & Winans* and *Hinton & Smith,* for defendants and appellants.

COLE, J.   An Act of the Legislature, approved March 19th, 1857, (Session Acts, 1857, p. 269,) authorised the Third Swamp Land Commissioner to close Pascagoula and other bayous, ageeeably with the provisions of "An Act to reclaim and drain the overflowed lands in the State of Louisiana," No. 133, approved 16th March, 1854.   The tenth section of this Act made it the duty of the Engineers, in their respective districts, to determine the locality, extent and dimensions of the necessary levees and drains to reclaim the swamp and overflowed lands of the State.

It is admitted by the parties, "that the defendants, under a contract with the Swamp Land Commissioner, are about to enter on the land of plaintiff and build a levee along the bank of bayou Pascagoula, about five hundred yards in length, cutting off five or six acres of plaintiff's land in the parish of Caddo, which land is and has been planted in cotton ; that they will dig up the earth and render the said five or six acres entirely worthless; that said land is a part of the best portion of plaintiff's land and is worth, with the crop, eighty dollars per acre; that the said defendants are about to build a levee, or dam, across said Pascagoula bayou, in order to prevent the water of Red River from running down said bayou, which is a natural outlet of said waters ; that in a high stage of water a large volume of water passes down said bayou ; that the effect of closing its mouth will be to raise the water on plaintiff's land, rendering the whole of his land more liable to overflow and injury ; that all his best land is immediately on the bank of Red River and said bayou, and that his plantation will be depreciated in value ; that the defendants avow their intention of commencing and prosecuting said work, and will do so unless inhibited by injunction, without paying, or offering to pay plaintiff any compensation or remuneration.

" The defendants propose to act strictly in accordance with the instructions of the engineer of the third swamp land district, who has the control and supervision of the work, and in pursuance with the Act of the Legislature authorising said work to be done, but as yet has not commenced work."

Plaintiff sued out an injunction to prevent the intended action of defendants. The writ was sustained and defendants have appealed.

It is averred by plaintiff, that the said Acts of 1854 and 1857 are in violation of Articles 130, 131 and 132 of the constitution of the State, which make it the duty of the Legislature to organize a Board of Public Works, to consist of four Commissioners, who shall be elected by the legal voters of the different districts, and who shall exercise a diligent and faithful supervision of all public works in which the State may be interested, except those made by joint stock companies.

51

It is unnecessary to decide the constitutional questions raised by appellee on these Articles, as he appears willing to waive them in the event he is compensated for his injury previous to the undertaking of the work, and our view of the case grants him this compensation.

It is contended by defendants, that the Constitution of 1852 recognises the right of the State to construct levees and drains to reclaim the swamp and overflowed lands (Art. 128), and that this power was delegated by the Act of 1854, to the Swamp Land Commissioners, (Revised Statutes, p. 425,) and that the Act of March 19th, 1857, specially authorised the works in question. Further, that the lakes, navigable rivers and watercourses in the State, are legitimate subjects of legislation, whether the object be to close, open, or make new channels or outlets for them, and that the constitutionality of the Act of 1857, under which the defendants were acting, cannot be seriously controverted.

The principal question in the case at bar is, whether the construction of the proposed levee on the land of plaintiff, for the purpose of closing the Pascagoula bayou, and the destruction of the quantity of land, as shown by the admission of facts, will be an expropriation of his property, or a divestiture of his vested rights, in the sense of Article 105 of the Constitution of 1852, which is as follows : " No ex post facto law, nor any law impairing the obligation of contracts, shall be passed, nor vested rights be divested, unless for purposes of public utility, and for adequate compensation previously made."

The determination of this proposition depends on the signification in Article 105 of the words " nor vested rights be divested."

It is averred by defendants, that neither the legislature, nor the courts under the territorial or State governments, have ever considered the construction of levees under statutory authority, as the expropriation of private property for public purposes, but only as matters of police or administration for the public welfare, and that the levee laws command the riparian proprietors on the Mississippi river to construct levees on their lands at their own cost, and make no provision for any compensation.

We conceive, however, there is an essential difference between the obligations of proprietors, under the general system of levee laws, and those of plaintiff in the present case.

The levee laws have been enacted for individual and public utility. The use of the space of ground on the banks of the Mississippi river, necessary for the making and repairing of levees and roads, was one of the conditions of the ancient grants of land on the Mississippi, and " sufficient depth was always given to each tract to prevent the exercise of the public rights from proving ruinous to the individual." 7 An. 150, Zenor v. Parish of Concordia.

The safety of each front proprietor required, not only the construction of a levee on his own land, but also on that of his neighbor.

The levee system of Louisiana has been devised and maintained, not for the reclamation of swamp lands, but the protection of arable soil from overflow and inundation.

Each levee has been considered as the continuation of one great plan, for the preservation of the cultivated fields of the inhabitants, or of those that might be brought into cultivation.

It never has heretofore been deemed a part of the levee system, that a proprietor was bound to yield a part of his soil, for the construction of a levee for the purpose of reclaiming overflowed lands, when it was not necessary originally to

prevent his lands from inundation, but only rendered so by the closing of a bayou for the purpose of reclaiming the lands of the State or of individuals.

It is unjust that improvements should be made at the expense of one individual when he is not to be benefited by them, and when they are created, not for his good, but for that of the State, or persons who may own land on a bayou, or in its vicinity. Money is taken from him, without an equivalent, to enrich others. Such a system strikes at the very foundation of the rights of property, and can not be enforced in any nation which respects justice and individual rights. The principle of such a system would be to make great ameliorations, benefiting a large number of people at the expense of the few, who might own property in the immediate vicinity of the works requisite to effect these improvements.

In the case at bar, plaintiff is expected to give his land for the purpose of stopping up a bayou and making a levee. Why is he called upon rather than another? The only reason that can be given is, because his possessions lie where the work is to be done, which is to be the source of riches for the proprietors of lands at a distance from him. If such a principle were adopted, there would be no protection for individual proprietors.

We admit that a proprietor, who owns lands in caving bends, may be obliged, from public necessity, to construct his levee so far back as to diminish materially his arable land, but this case is essentially different from that now under consideration.

There is, therefore, no principle in the levee laws, in this State, which can authorise the action of defendants.

It is also contended by appellants, that the injury to the land of plaintiff is a damage, but not a divestiture of vested rights.

We are of opinion, however, that a divestiture of vested rights may be effected, not only by a change or destruction of the title to property, but also by the destruction of the property itself.

Suppose that a man had leased a tract of land for a series of years, and erected thereupon a dwelling house, and defendants should destroy the house; this would certainly be the highest degree of the divestiture of vested rights, for although, technically speaking, the title is not touched, yet the object of title, the property itself, is destroyed.

What is the great object of titles to property? Is it not that the property may be safely enjoyed? The destruction of the property is then, at least, as much a divestiture of vested rights as the wresting of the title from its lawful owner.

Property may be justly said to be destroyed when it is rendered unfit for the object for which it was intended.

Now, the evidence establishes that the proposed action of defendants will render five or six acres of his land entirely worthless. That this land is and has been planted in cotton, and constitutes a part of the best portion of his plantation.

As then the action of defendants will render a part of the property of plaintiff unfit for the purpose for which it was intended, and as effectually destroy it for the object of cultivation as if the title had been divested, we consider that their proposed operations will divest plaintiff of a part of his vested rights, and thus violate Article 105 of the Constitution of Louisiana.

The case of *Dubose* v. *Levee Commissioners*, 11 An. 167, is not adverse to the principles in the present decision.

The judgment of the lower court perpetuated the injunction. It ought to be amended, so as to perpetuate it until adequate compensation is previously made.

It is, therefore, ordered, adjudged and decreed, that the judgment be so amended as that the injunction shall be perpetuated, until adequate compensation be previously made to plaintiff for the works contemplated by defendants, as described in the petition; and that the judgment, so amended, be affirmed, and that defendants pay the costs of appeal.

SPOFFORD, J., concurring. I concur in the decree in the above entitled causes.

The objection urged in argument by the plaintiffs to the mode of choosing the Third Swamp Land Commissioners, cannot avail them in this collateral manner. He is an officer of the State *de facto*, acting under color of legal authority, and he is not a party to this suit. To declare his action null and void by a side-long judgment in a suit between third persons, would be contrary to reason as well as to precedent.

But the conceded facts of this case show an attempt to divest vested rights, without adequate previous compensation, in violation of Article 105 of the State Constitution. It should be remarked that this is not the exercise of a right of servitude upon the lands of plaintiffs for the purpose of building a levee authorized by law, along the bank of a navigable river. If it were, the plaintiffs would in my opinion, have no right to complain. The sole object of the parties enjoined is to build a dam across the mouth of Pascagoula bayou, and thus close it, with a view of reclaiming swamp and overflowed lands, not belonging to the plaintiffs in injunction, and without any view of benefiting their lands. This, I think, it is within the competence of the sovereign power to order. But in doing it, the State must take care not to divest the vested rights of third persons, without making an adequate previous compensation.

My opinion that the defendants were about to impair the vested rights of the plaintiffs, is based upon the facts that they were about to enter on the lands of plaintiffs *and cut off five or six acres*, which land is and has been planted in cotton; that they intend to dig up the earth, and render the said five or six acres utterly worthless, it now being the best part of the plaintiffs' land and worth, with the crop, eighty dollars per acre; and that this is to be done for the purpose of making a dam across Pascagoula bayou, not for the benefit of plaintiffs, but of other persons.

These admissions, to my mind, imply an intended invasion of the plaintiffs' right of property; an interference with their dominion which includes the exclusive *jus utendi et abutendi*; and even the destruction of the tillable soil itself, as well as the growing crop. This is, to all intents and purposes, an expropriation for which the owner should receive adequate compensation, without which previously made, the defendants would be trespassers upon the lands of plaintiffs; for the plaintiffs' lands owe no servitude by law, for the mere purpose of building a dam across Pascagoula bayou. The other damages alleged are consequential merely, and furnish no ground of action.