### No. 176.

### JOHN CHAFFE & SONS VS. P. J. TREZEVANT ET ALS.

1. A contract entered into with the State Board of Engineers, under act No. 7 of 1884, for cutting the bends and straightening certain navigable watercourses in this State, the expense of which is borne by private and interested individuals, and under the circumstances detailed in opinion, is a private enterprise, and cannot be maintained or enforced on the pretence that it is in the exercise of the police power of the State, or that it finds sanction in the levee laws of the State.

APPEAL from the First District Court, Parish of Caddo. Taylor, J.

---

*Alexander & Blanchard,* for Plaintiffs and Appellants:

1. Private property shall not be taken nor damaged for public purposes, without just and adequate compensation being first paid." Constitution of the State of Louisiana, art. 156, C. C. 497, 2628, 2629.

2. The decisions in this State go only to the extent of holding that the State, through its proper officers, has the exclusive right to determine the propriety, location and mode of building public levees, and that for any damage incidentally caused by such work, the State is not liable.

All of these decisions are based upon the laws which impose a servitude upon the lands of all riparian owners in this State. C. C. 665, 457, 861, 862; 7 Ann. 150; 11 Ann. 165; 12 Ann. 185; 13 Ann. 401; 34 Ann. 494.

3. It has been held that for houses actually taken and destroyed in the course of construction of a public levee, the owners were entitled to compensation. 12 Ann. 185.

Also that for land taken and damaged in building a dam across the mouth of a bayou, under the supervision of the State Engineer, and in accordance with an act of the Legislature, the owner was entitled to compensation, and could maintain his rights by injunction. 13 Ann. 401.

Both of these cases were decided under the Constitution of 1852, which contained no such provision as art. 156 of the Constitution of 1879.

4. The Bass case is not applicable to this. In that case no part of his place was actually taken. The damages were purely incidental to the construction of the levee. and were occasioned, as plaintiff claimed, by the failure or omission of the State engineers to put it on the front of his plantation, whereas they located it in the rear.

In this case the plaintiff's plantation was to be severed by cutting a canal through the middle of it, and turning the channel of Red river through it, thus taking a large body of cultivated land, and destroying his gin-house, store house, dwelling, cabin, fences and other improvements. The damage is direct and immediate.

5. The case of Green vs. Swift, 47 Cal. 536, is not against us, but on the contrary supports our position.

It was there held that the damage suffered by plaintiff was incidental only to the prosecution of a lawful public work, for which he was entitled to no compensation. But the opinion further states that the act of the legislature was constitutional, because it provided for compensation to all persons from whom property was directly taken by the new channel of the river.

6. An act of the legislature which authorizes the taking of private property for public use is unconstitutional, unless provision is made in it for compensation. 2 Gray 1; 103 Mass. 120; 127 Mass. 50; (24 American Law Reports 338).

*Wise & Herndon* and *Young & Thatcher*, for Defendants and Appellees:

The opinion of the court was delivered by

WATKINS, J. Act No. 7 of 1884, provides that whenever the levee commissioners of any district, or the police jury of a parish not included within any levee district, shall request the State Board of Engineers to make an examination, or survey of any stream therein, said board are required, when such examination is made, and if thereafter they think the navigation of such streams will be improved or the land will be protected from overflow by cutting across the bend, and straightening such stream, " they are hereby required to have the work done under the laws and regulations governing the construction of the public levees.

Arising under this statute are the following substantial facts :

On the 20th of November, 1885, the State Board of Engineers, at the request of the police juries of Bossier and Caddo parishes, caused an examination to be made of a portion of Red River, a navigable stream, and recommended that ditches be cut across the bends at certain points, and particularly the one on which is situated plaintiff's Pascagoula plantation, worth about $20,000.

In pursuance. of said report a contract was made with defendants, duly approved by the Governor, to cut the canal across the said bend of the river, and they were proceeding to carry it out when met with plaintiffs' injunction.

The report upon which their contract is based is that " considering all the circumstances of the case as affecting protection from overflow, it will be *advantageous* to cut through the bend above-mentioned."

The evidence shows that defendants had entered upon plaintiffs' Pascagoula plantation with the avowed intent to cut a canal across the bend of the river, in order to divert its course from the natural channel, and cause it to flow across, and through said plantation, in its entire length, immediately through the cultivable portion, and most valuable buildings and improvements thereon, whereby it would have been completely severed by the stream, leaving an island on one side, consisting of about 500 acres, not susceptible of natural drainage, and about 300 acres on the opposite side.

The witnesses concur in the opinion that the direct and immediate effect of this deflecting the bend of the river and turning the flow of the stream across plaintiffs' land would be to inflict on them a loss of $8000 or more.

Plaintiffs' injunction prevented the cutting of the canal.

The statute in question made no provision for compensation to individuals suffering injury, and none was tendered plaintiffs.

Under this state of facts they insist that this statute violates arts. 155 and 156 of the State Constitution, and that all acts done under it are null and void; also, that the particular work in question was in reality a *private* enterprise, and not one of public utility.

The defendants argue. that, in the exercise of its general police power, the Legislature had a constitutional right to enact the law in question, and, in pursuance thereof, the contract for cutting a canal through plaintiffs' plantation for the purposes recited, was a legal and enforceable one, and plaintiffs are not entitled to compensation for any injury they might sustain thereby.

The learned judge of the court below likens the right sought to be exercised to the taking of the property of individuals to prevent the spread of a conflagration, a pestilence, or the construction of levees upon lands adjacent to navigable watercourses to prevent inundation, no compensation being required.

They rest upon the maxim that the public safety is the supreme law, and it must be first consulted. The interest of the citizen being

subordinate to that of the State, the former must yield in case of conflict.

I.

What the police power of a State is it is difficult to determine with precision. It is generally said to extend to the protection of the lives, health and property of the citizen and the preservation of good order and good morals; to the promotion of domestic tranquility and the comfort and quiet of all persons.

By the general police power of a State persons and property are " subject to all kinds of *burdens* and *restraints* in order to secure the general comfort, health and prosperity of the people."

It has been well said that " it is a settled principle, growing out of the nature of well-ordered society, that every holder of property however absolute, and unqualified may be his title, holds it under the implied liability that his *use* of it shall not be *injurious* to the equal enjoyment of others, having an equal right to the enjoyment of their property, nor *injurious* to the rights of the community." Bass vs State, 34 Ann. 494.

Citing 7 Cush. 53, Commonwealth vs. Olger, plaintiffs allege that defendants were employed and engaged by private individuals to do the work of cutting the bend across the petitioners' plantation, and that any pretended contract with the State, or its officials, was a mere subterfuge, and that the funds with which to pay for same were supplied and furnished solely by the interested persons whose lands lie above Pascagoula bend.

Quite a number of citizens of the immediate vicinity, alleging themselves to be interested in the question, intervene and adopt the allegations of plaintiffs' petition.

They allege that the cutting of Pascagoula bend is not necessary for the purpose of improving the navigation of Red River, or for the general protection from overflow, nor was it so intended by defendants.

" On the contrary, they charge specially, and allege that it was a job, or scheme of a few individuals owning lands above the said bend to relieve and benefit themselves at the expense of the plaintiffs and intervenors, their neighbors, who lived below them."

The plantations of all the intervenors are shown to be valuable and above overflow, and are situated below Pascagoula.

The cutting of a canal through it, as proposed, would cause the river to rise higher, and subject them to overflow. It would increase the current, and cause the banks of the river to cave. From these two causes great damage would be suffered by them, to the extent of many

thousands of dollars. It would also cause a large portion of plaintiffs' plantation to overflow annually.

The estimated cost of cutting Pascagoula bend is $1700, and about $3600 for the cutting of three bends included in contract. This amount, except $100 appropriated by the State, was to be paid by private individuals, and was actually subscribed by them.

The report of the State Board of Engineers states substantially that the floods in Red River, in the neighborhood of Tone's bayou, have reached an unusual height, overflowing the natural banks of the river, and requiring additions to the height and extent of the levees there, beyond the means of the State and sub-district to undertake; and "*it is believed* that the cutting across of certain bends of Red River, below the region of the high water, would *locally* reduce the height of floods' and thus tend to prevent overflow * * * but that such a system *should not be made general, nor be greatly extended, until time has been given to ascertain the changes actually resulting from a few such cuts,* and for the bed of the river to adjust itself to new conditions. * * Our conclusion is that, considering all the circumstances of the case as affecting protection from overflow it will be *advantageous* to cut through the bends above-mentioned. * * We learn, however, that funds for construction of the work have been raised by subscription, and arrangements have been made by which the cost to the State will be only nominal, or say the round sum of one hundred dollars."

Under this state of facts it seems to us clear that the enterprise enjoined is a private one—only an experiment, inaugurated in the interest of a few private individuals, for their own advantage. We are, therefore, dispensed from discussing the serious constitutional questions entertained by the judge *a quo*, in his opinion.

We do not think that there is involved, in this case, any question of the exercise of the police power of the State, and hence there is no necessity for us to pass upon the constitutionality of the statute in question.

In our opinion the work contracted for was not to be done in pursuance of the laws and regulations governing the construction of the public levees.

Much reliance has been placed upon the opinion of this court in Bass vs. State, 34 Ann. 494, and Green vs. Swift, 47 Cal. 536.

The latter is not in point, for reasons above assigned, and the former finds support in the theory that servitudes are imposed for the public utility, and relate to the space which is left for the public use by the adjacent proprietors, on the shores of navigable streams, and for making

and repairing levees. R. C. C. 457; 21 Ann. 165; 4 Ann. 73; 18 La. 295; 6 Ann. 77; 7 Ann. 150; 111 U. S. 704.

If, in this case, the plaintiffs sustain loss it cannot be said that it must be attributed to an unfortunate investment upon a caving bank. 11 Ann. 166; R. C. C. 665.

The work projected cannot be defended upon the ground that it was necessary to confine the waters and shelter the inhabitants from overflow and inundation. 12 Ann. 655.

Each proprietor is personally interested in his own protection, as well as his neighbors, yet, as the property situated upon navigable streams, that are subject to overflow, are of little value without levees, the Legislature has the power to compel such riparian proprietors to make levees in front of their plantations without any further compensation than the increased value which such works would confer upon their lands. The levee laws are not intended to apply to lands which are entirely above overflow.

It has been held that the levee system of Louisiana has been devised and maintained for the preservation of *arable* lands from overflow and inundation.

Each levee has been considered as a continuation of one great system, or plan for the preservation of the *cultivable fields* of the inhabitants.

It has never, heretofore, been deemed a part of the levee system that a proprietor was bound to yield a part of his soil for the construction of levees for the purpose of reclaiming overflowed lands, where it was not originally necessary to prevent his land from inundation, and when he is not benefited by them. If this was permitted, money would be taken from him without an equivalent, to enrich others. " The principle of such a system would be to make great ameliorations, benefitting a large number of people at the expense of the few who might own property in the immediate vicinity of the works requisite to effect these improvements.

"There is no principle in the levee laws in this State which justifies this theory." Cash vs. Whitcomb, 13 Ann.

In our opinion defendants' theory finds no application or sanction in the levee laws of this State. The work enjoined is not such a work of public improvement as is contemplated in R. S. 1390, and the enforcement of defendants' contract would operate a direct and invidious distinction in favor of certain interested individuals, and to the great detriment of plaintiffs and intervenors, without previous adequate compensation paid.

Grant everything that the report announces, and the contract under it cannot be maintained. It only suggest the propriety, convenience and utility the cutting of this canal would subserve, and these suggestions negative the idea of the existence of any great necessity, or impending danger, the cutting of this canal would prevent or avert.

The inauguration of such a system, as is clearly contemplated, would be destructive of the most valuable plantations in the vicinity of Pascagoula bend, if not of Red River valley.

The plaintiffs' injunction should have been maintained.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided, annulled and reversed, and that plaintiffs' injunction be sustained and made perpetual, and that the defendants be taxed with the cost in both courts.

Judgment reversed.