LOTTINGER, Judge.
This- matter is before us on an appeal taken by the defendant, the Louisiana Department of Highways, from a judgment in favor of plaintiff, Louisiana Power & Light Company, awarding to the latter the sum of $10,882.53 representing damages for an alleged wrongful taking of property.
There is no dispute as to the facts, the pleadings and stipulations filed herein revealing the following:
Louisiana State Highway No. 18 (at one time known as State Plighway 30) runs along the west bank of the Mississippi River and generally parallel thereto. West-wardly from the western water line of the river there is batture, then a levee, then a strip of ground, then Highway 18 and, west of the latter, various parcels of privately owned property.
During the year 1930 the Louisiana Power & Light Company obtained conventional *808 rights of way or servitudes from private property owners having property fronting on the west bank of the Mississippi River between Donaldsonville in the Parish of Ascension and Hymel in the Parish of St. James, and, pursuant thereto, erected an electric line on the west side of Highway 18 consisting of the usual poles, wires and appurtenances.
In May of 1950, the Louisiana Department of Highways notified the Louisiana Power & Light Company that it was about to commence a project of widening Highway 18 (at that time still known as Highway No. 30) and demanded that the power company remove its line running parallel thereto at its own cost. Reserving its right to protest and litigate the matter, the power company removed the line which had a length of 8.7 miles from Donaldsonville to Hymel.
The cost of removing the line amounted to $14,021.97 with a salvage value of $3,139.-44 leaving a difference of $10,882.53 which the company seeks in this lawsuit to recover for the forced removal of the line.
The position of the Highway Department is that by virtue of LSA-C.C. Articles 665 and 707 the owners of property bordering navigable streams are required, without compensation, to give so much of it as is needed for the construction of levees and highways. The position of the power company, on the other hand, is that Article 1, Section 2 of the Louisiana Constitution, LSA is predominant and that LSA-C.C. Articles 665 and 707 apply only in restricted instances involving public purposes directly related to the nature, navigable character, or use, of a navigable stream.
At the outset, it should be observed (and this is not disputed by appellant) that a servitude is a property right. See Arkansas Louisiana Gas Company v. Louisiana Department of Highways, La.App., 104 So.2d 204. The power line situated on the servitude is, of course, property, and the question is whether, due to the location of the servitudes, its taking must be paid for in the light of the aforementioned codal articles.
The question, we believe, has been squarely passed upon by the Supreme Court in the case of Hebert v. T. L. James & Co., 224 La. 498, 70 So.2d 102. There the plaintiff owned a tract of land in the Parish of Terre-bonne having a front of some six arpents on Bayou Terrebonne, a navigable stream. Across the front of the tract and running parallel to and in close proximity to Bayou Terrebonne was a gravelled road some 30 feet in width that had been used as such for a great many years. The Highway Department notified the landowner that it intended to construct a paved highway along the route and that a servitude some 75 feet in width would be required and which it would not be required to pay for under LSA-C.C. Articles 665 and 707. When the contractor commenced work the landowner sought injunctive relief and the Highway Department intervened. In reversing this Court, the Supreme Court in the course of its opinion, held as follows:
“But be that as it may, and irrespective of what influenced the mentioned interpretation of LSA-Civil Code Article 665, it is certain that the servitude so imposed by the codal articles on property bordering a navigable stream was not intended to serve the public for any purpose other than that which is incident to the nature, navigable character, or use of the stream.

“Although the case of State v. Richardson, 140 La. 329, 72 So. 984, 988, did not involve the establishment of a road, the following comment contained therein as to the servitudes of use along a river or stream is pertinent: ‘The ownership of the banks of a navigable river, as recognized by C.C. art. 455, and of. the alluvion which is formed “to any soil situated on the shore of a river or stream,” as recognized by C.C. art. 509, is qualified by the conditions imposed by those articles, and *809 hence the right of use, in both instances, is in the public; but that right is also qualified by the terms in which it is reserved. The use must not only be a public use, but it must be the particular public use specified in the reservation, being, in the one case, that which is incidental to the navigable character of the stream and its use as an avenue of commerce, and, in the other, that “which is required by law for the public use,” and which, where the stream is nonnavigable, is perhaps more restricted. And, save to the extent that it is so qualified, the ownership is as perfect as law can make it.’
ifc ‡ ‡ sji
“With further reference to the servitude in the Village of Moreauville case the court, in the opinion, had previously said that: ‘This servitude is not the same as that by which, according to article 455 of the Code, the banks of rivers are free to the public. It is a very much more onerous one, extending much further inland. That feature of it requiring space for a levee is peculiar to Louisiana. The public road feature is of European origin, and goes back, we believe, to the Romans. It had its birth in the necessity of there being a towage path along the banks of navigable and flotable water courses, Domat, vol. 2, liv. 2, tit. 8, § 2, art. 9, says that by law the public have a right to a towing path along the banks of navigable waters. For the purposes of this case, we need not go back further in the legal history of the statutory recognition of this servitude than the French Ordinance of 1669, referred to at page 123, 4 Mart., O.S., in the case of Renthorp v. Bourg, to the effect that: “Owners of estates, bordering on navigable rivers, ought to leave along the banks a space, at least 24 feet wide, for a royal road and towing path.” ’
“Apparently, by this language, the court was recognizing that broad serv-itudes of road were not authorized by the codal articles, as the earlier cases had stated, but that they had resulted from custom influenced by foreign laws. However, we quote it here primarily for the purpose of showing that the servitudes established by the Code are not nearly so onerous as were those originating from the French and Spanish ordinances.
“Our conclusion is that intervenor’s theory is not supported by the jurisprudence or codal laws of this state. Neither does it appear to be sound in principle. Under it the Department of Highways could construct an eight-lane paved public highway on and along the west banks of the Red and Mississippi Rivers, running through highlands and lowlands from the Arkansas line above Shreveport to the Gulf of Mexico (a distance approximating 400 miles), without paying any compensation for the required right of way of several hundred feet. On the other hand, if the Department sought to build a paralleling road, of the same type and distance located one-half mile from the mentioned banks, the land required therefor would have to be expropriated and paid for. Surely, the matter of constructing the road either along the shoreline or a short distance away should not, and cannot legally, be determinative of the question of whether compensation is due for the private property necessary to be taken for that public purpose.”
We perceive no distinction between the Hebert case and the instant one. The road-widening project here is obviously not related to the nature, navigable character, or use of the river and the codal servitude provisions are inapplicable.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.