**UNITED GAS PIPE LINE CO.**

**v.**

**LAFOURCHE PARISH POLICE JURY**
**and Drainage District Number 12**
**of Lafourche Parish.**

**Civ. A. No. 70–2639.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Feb. 23, 1972.

---

Ray A. Barlow, of Hargrove, Guyton, Van Hook & Ramey, Shreveport, La., Frank W. Wurzlow, Jr., of Ellender, Wright & Wurzlow, Houma, La., for plaintiff.

Wilmore J. Broussard, Jr., Dist. Atty., Walter I. Lanier, Jr., Asst. Dist. Atty., Lafourche Parish, La., for defendants.

CHRISTENBERRY, District Judge.

### REASONS FOR RULING

United Gas Pipe Line Company (hereafter United) brought this action against defendants Lafourche Parish Police Jury and Drainage District No. 12 of Lafourche Parish seeking a declaratory judgment that United is not obligated to remove or relocate three of its pipelines located in Lafourche Parish, Louisiana, without payment of full, adequate, and just compensation by the defendants. The suit results from the defendants' demand that United relocate and lower the pipelines in order to accommodate the construction of a new reservoir canal in Lafourche Parish. If the defendants succeed in making good their demand then the result, argues United, will be a deprivation of private property in violation of the fourteenth amendment's due process clause. In addition, United predicates jurisdiction on the commerce clause of the Constitution and the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (1970). On January 13, 1972, the court granted a motion for summary judgment in favor of the plaintiff and the object of this memorandum opinion is to set forth the court's written reasons in support of that ruling.

The facts are not in dispute. Pursuant to a right-of-way purchased by United in 1940 from a Mrs. Ora May Gray Burnes, United constructed in 1941 and 1942 a 16-inch natural gas pipeline over the property described in the right-of-way instrument. This pipeline is part of a line that extends from the Lirette area in Terrebonne Parish, Louisiana, to Mobile, Alabama.

In 1942 and 1943, United constructed a 12-inch natural gas pipeline over the same property pursuant to the aforementioned 1940 right-of-way which had been obtained by Mrs. Burnes. This line formed part of the pipeline which extends from Lake Long in Lafourche

Parish to St. Rose in St. Charles Parish, Louisiana.

The third line involved in this litigation was a 30-inch natural gas pipeline constructed in 1959 and 1960 pursuant to a right-of-way obtained from Mrs. Burnes' successor in interest, Mr. Gabriel Martinez, in 1959. This right-of-way covers the same property as did the 1940 right-of-way obtained from Mrs. Burnes. This pipeline extends from the Lirette area of Terrebonne Parish to Mobile, Alabama.

All three of these natural gas pipelines are being operated and maintained by United and they are being operated pursuant to a Certificate of Public Convenience and Necessity issued by the Federal Power Commission. All three of the pipelines traverse Sub-Drainage District No. 3 of Drainage District No. 12 of Lafourche Parish. The cause of this controversy is the determination by Drainage District No. 12 that a new reservoir canal was necessitated by the drainage needs of the district. Defendants contend that United should be required to bear the cost of the relocation of the pipelines on two grounds: (1) that it is required by the language of the permits and, alternatively, (2) that a riparian servitude exists in favor of defendants giving them the right to appropriate United's property. It is the opinion of the court that defendants could not prevail on either ground and therefore summary judgment was granted for the plaintiff.

### Interpretation of the Permits

Not only was it necessary that United obtain right-of-ways from land owners on whose land the pipelines were constructed, but it was also necessary that permits be obtained from the Drainage District inasmuch as there were canals and reservoirs under which United placed its lines. Each of the three per-

mits with which we are here concerned stated that the Drainage District granted to United " . . . the right and privilege, to the extent of grantor's jurisdiction, to construct, maintain and operate a gas pipe line and appurtenances thereto . . . over and through the following reservoirs and canals minutely described as follows . . . . " The permits then set forth the names and locations of those canals to be traversed by each pipeline. Each permit is accompanied in the record by maps and plans which further explain the route to be taken by the pipeline as it runs through Drainage District No. 12.

Defendants contend that the following clause which appears in almost the same form in each permit requires that United bear the cost of relocation:

> The said Grantee [United] obligates itself to place the pipe line at least six feet below the bottom of the said canals, with the exception, however, of the forty arpent canal where the pipeline shall be placed at least four feet below the bottom of said canal; and the said Grantee [United] further obligates itself to raise or lower, at its expense, said pipe at any time that it may be requested by Grantor in connection with future construction or dredging work.[1]

The jurisprudence of Louisiana, and indeed of all states, requires that to determine the true intent of the parties a contract must be construed in its entirety; that is, the meaning is to be taken from the instrument as a whole and not by lifting paragraphs, sentences, or clauses out of context.[2] Thus, on the basis of a plain reading of these permit-contracts and with the aid of this state's jurisprudence, I am unable to accept the defendants' contention that these instruments can be construed so as to require United to pay for the relocation of its

[1] The first clause of this quotation varies slightly from permit to permit. The second clause dealing with raising or lowering, however, is identical in all three permits.

[2] *See* Insurance Co. of North America v. Delafield, 278 F.2d 683, 685 (5th Cir. 1960); Louisiana Power & Light Co. v. Town of Arcadia, 119 F.Supp. 818, 820 (W.D.La.1954).

pipelines in order to accommodate the construction of a *new* canal or reservoir. It should be quite clear that United, in agreeing to "raise or lower, at its expense, said pipe at any time that it may be requested by Grantor in connection with future construction or dredging work," intended that this obligation only extend to those "reservoirs and canals minutely described" in each of the three permits.[3] To impute another meaning to the language in these permits is to deny the meaning of straightforward contractual language involving only a modicum of technical or legal language. I find that an equitable and reasonable reading of the permits exonerates United from liability for the relocation costs necessitated by an entirely new canal. The words of the permits are such that the intent of the parties cannot now be disputed. *See* Louisiana Power & Light Co. v. Town of Arcadia, 119 F.Supp. 818, 820 (W.D.La.1954).

Recent authority for the court's position is found in Tenneco, Inc. v. Greater Lafourche Port Commission, 427 F.2d 1061 (5th Cir.), cert. denied, 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 141 (1970). In that case Tenneco was absolved from bearing the cost of lowering its pipeline outside the original bed of Bayou Lafourche. Tenneco had purchased a right-of-way from the state of Louisiana to cross the bayou and had purchased a separate right-of-way from an adjacent landowner. In addition, Tenneco had received permission for the bayou crossing

from the Army Corps of Engineers (which was required because Bayou Lafourche is navigable) on the condition that Tenneco would pay to remove or alter the pipeline if it became necessary. Similarly, Tenneco was given permission for the crossing by the Louisiana Department of Public Works on the following condition:

> Should changes in the locations or sections of the existing channels, or in the generally prevailing conditions in the vicinity, be required in the future, in the public interest, the applicant shall make such changes in the project concerned, or in the arrangement thereof, as may be necessary to satisfactorily meet the situation, and shall bear the cost thereof.

427 F.2d at 1063.

Subsequently, the Louisiana Department of Public Works decided to widen and deepen the bayou in the area where the bayou was traversed by Tenneco's pipeline. Public Works required Tenneco to pay for the relocation of the pipeline not only in the original bed of the bayou but also on the adjacent land over which Tenneco had acquired a separate right-of-way from a private landowner. Reversing the lower court, Judge Wisdom, for the Fifth Circuit, held that "a proper construction of the Public Works permit limits its effect to the area within the right of way granted . . . ." 427 F.2d at 1064.

In the *Tenneco* case, the plaintiff agreed to pay for the relocation of its

---

3. The three permit-contracts in question were entered into between United (grantee) and Drainage District No. 12 of Lafourche Parish (grantor) pursuant to La.R.S. 38:1614, which states in pertinent part:

> § 1614. *Corporate status and powers of district*
>
> Any drainage district shall constitute a body corporate in law, with all the powers of a corporation. It shall have perpetual existence, incur debts and contract obligations in accordance with law, sue and be sued, have a corporate seal, and do and perform any and all acts in its corporate capacity and in its corporate name necessary and proper for the carrying out of the purposes and

objects for which the drainage district was created.

> The drainage district may expropriate property for the purpose of acquiring sites for pumping stations or acquiring land for any other purpose that it may find necessary to carry out the purposes for which it was created. The drainage district may acquire machinery, maintain pumping plants or any machinery whatever that may be found necessary for the purpose of draining or reclaiming any of the lands embraced within the drainage district, and shall own the right of way for levees, canals and ditches, and all sites which are acquired either by donation, purchase or expropriation, in full ownership. . . .

pipeline within the bayou's original bed. Likewise in the case at bar there is no issue as to liability for relocation costs of United's pipelines within existing canals. If such costs were involved, United freely concedes it would be liable. The case is like *Tenneco,* however, in that a demand has been made on United for costs involving relocation of United pipelines outside of those canals covered by the three above-mentioned right-of-way permits.

As the plaintiff has observed, these facts present a much stronger case in favor of the gas pipeline company than did *Tenneco.* In that case the controversy was over the widening of a pre-existing bayou whereas here the Drainage District is building an entirely new canal. In addition, the language of the permits *sub judice* would not even seem to suggest that United obligated itself to move its own lines to accommodate such a new canal. On the other hand, in *Tenneco* the permission given by the state Public Works Department in a letter to Tenneco was such that it was arguable that Tenneco could be required to finance relocations of its pipeline outside of the bayou for which permission to cross was necessary. *Cf.* Arkansas Louisiana Gas Co. v. Louisiana Department of Highways, 104 So.2d 204 (La. App.2d Cir. 1958), cert. denied (unreported).

By accepting the construction of the permits that plaintiff advocates, a consideration of the constitutional issue is pretermitted. This was also the course followed by the Fifth Circuit in *Tenneco, supra,* 427 F.2d at 1065, and, of course, it accords with the longstanding policy of the Supreme Court that a constitutional question, although properly presented, will not be disposed of on constitutional grounds if some other ground for disposition is properly available. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (Brandeis, J., concurring). Nevertheless, it should be noted that it was on the basis of a substantial federal question that this court

took jurisdiction; *i. e.,* whether the plaintiff would be deprived of certain private property by Louisiana political subdivisions without the fourteenth amendment guarantee of due process of law. It is therefore pertinent to observe the recent case of United Gas Pipe Line Co. v. Terrebonne Parish Police Jury, 319 F. Supp. 1138 (E.D.La.1970), aff'd per curiam, 445 F.2d 301 (5th Cir. 1971), where the defendant parish passed an ordinance requiring companies such as United to pay for any relocation costs necessitated by any future public improvements within the parish. Initially, the district court held that the parish policy as evidenced by the ordinance was in violation of the fourteenth amendment. Subsequently, however, at a new trial, the trial court found that the confiscatory ordinance could not stand because of federal preemption by the Natural Gas Pipeline Safety Act of 1968, 49 U.S.C. § 1671 *et seq.* Still, the district court's original finding merits consideration in light of the present situation which involves an attempt to impose a condition of questionable constitutionality on the plaintiff. The district court in the *Terrebonne Parish* case stated:

> [T]he . . . requirement that United must agree to alter, relocate or remove its proposed pipeline at its sole expense, if it interferes with any future parish public improvement is, in effect, confiscatory and must fall. This condition precedent to the issuing of a permit would result in the taking of the pipeline company's property without the payment of just compensation in violation of the due process clause. . . .

319 F.Supp. at 1143 (Appendix A) [citations omitted]. Without reaching the constitutional question, it is certainly not inappropriate to say that such an unconstitutional taking as found in the *Terrebonne Parish* case could occur whether as the result of a parish ordinance or a parish policy governing the issuance of permits to gas pipeline companies. *See* Department of Highways, State of Louisiana v. United Gas Pipe Line Co., 258

F.2d 359 (5th Cir.), cert. denied, 358 U.S. 910, 79 S.Ct. 235, 3 L.Ed.2d 230 (1958).

*Louisiana Riparian Servitude*

In the event that the permits received an interpretation favorable to United, defendants have advanced the alternative argument that United should pay for the pipeline relocations on the theory that such an expropriation of private property without just compensation is permissible under Louisiana's riparian servitude. This argument, calling for the invocation of the extraordinary and highly unusual civil-law doctrine of appropriation is inapplicable to the present factual setting and cannot succeed.

■ Simply stated there is no riparian servitude because defendants cannot establish the threshold issue that the new reservoir canal is "necessary to the levee and flood control system on the river to which it is riparian, and not merely necessary to the flood control system in general." Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139, 142 (La.App.2d Cir. 1969). It is not disputed, however, that the Martinez tract of land is riparian to Bayou Folse, but this is insufficient to allow the defendants to claim a riparian servitude across United's pipelines. The seminal statement of this doctrine is article 665 of the Louisiana Civil Code of 1870 which reads in part: "Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of the navigable rivers, and for the making and repairing of levees, roads and other public or common works." Thus under certain specific circumstances the state may appropriate, *i.e.*, take without just com-

pensation, an individual's private property. This Louisiana flood control solution differs radically from the eminent domain or expropriation concept followed by other states whereby private property is taken for public use only upon full and just compensation. Wolfe, The Appropriation of Property for Levees: A Louisiana Study in Taking Without Just Compensation, 40 Tul.L.Rev. 233 (1966).

The only compensation afforded a person whose property is appropriated pursuant to the riparian servitude for levee or levee drainage purposes is the assessed value of the property for the preceding year. Louisiana Constitution, art. 16, § 6. This, of course, is a mere gratuity when one observes that the assessed value of that part of the three United pipelines in question totals only $747.00. On the other hand, United has submitted the figure of $482,600.00 as representing the actual expenditure necessary to relocate and lower the three pipelines in order to accommodate the construction of the new reservoir canal. *See* Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749, 752 (1956).

A recent explication of the riparian servitude by a Louisiana appellate court appears in Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139 (La.App.2d Cir. 1969). There a group of landowners sued the defendant levee board for various damages caused by the enlargement of Macks Bayou in Bossier Parish. The levee board defended on the ground that this was a proper case for appropriation as permitted by La.R.S. 38:113,[4] which defendant maintained created an additional servitude exclusive of Louisiana Civil Code article 665. Of this argument, also advanced by defendants in this case, the Louisiana court in *Grayson*, after serious consideration,

---

4. La.R.S. 38:113 *Control of drainage channels in levee and drainage districts*

The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Depart-

ment of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels.

concluded that article 16, section 6 of the state Constitution only applied to lands taken under Civil Code article 665 and not pursuant to La.R.S. 38:113. In formulating its narrow interpretation of the servitude doctrine, the court stated:

It is firmly established that Article 16, Section 6 limiting the compensation to be paid for land used for levees or levee drainage purposes to the assessed value applies only to lands subject to the riparian servitude established by Article 665 of the Civil Code, and that in order to be subject to the servitude, the land involved (1) must have been a part of a tract of land actually fronting on a navigable river at the time when the tract was first separated from the sovereign and (2) must be within the range of the reasonable necessities of the situation . . . . Further, A. K. Roy, Inc. v. Board of Commissioners for the Pontchartrain Levee District, 237 La. 541, 111 So.2d 765, has added the requirement that, in order to be subject to the servitude, the land taken must be necessary to the levee and flood control system on the river to which it is riparian, and not merely necessary to the flood control system in general.

229 So.2d at 142.

The *Grayson* situation is distinguished from this case in so far as Bayou Folse, to which the new reservoir canal is adjacent, is navigable whereas Macks Bayou in *Grayson* was not navigable. In fact the tract of land in *Grayson* was not even riparian and here the riparian character of the Martinez tract is stipulated. Thus the inquiry to be made concerns whether the new reservoir canal is "necessary to the levee and flood control system on the river [Bayou Folse] to which it is riparian, and not merely necessary to the flood control system in general." *Grayson, supra,* 229 So.2d at 142.

There are substantial questions raised by United as to the propriety of either a drainage district or a police jury exercising the power of appropriation which is traditionally exercised by a levee board. In addition, United maintains that the defendants' attempt to appropriate its property is inconsistent with defendants' behavior towards other property owners similarly situated. While recognizing the seriousness of these questions, I do not intend to consider them in that defendants' right to appropriate on the basis of a riparian servitude is negatived by the evidence showing that the new reservoir canal is a land reclamation project instead of a flood control device specifically related to the river or stream (Bayou Folse) to which it is riparian. Accordingly, the constitutions of the United States and Louisiana require that defendants in exercising the power of eminent domain compensate United for the actual costs of relocating the pipelines.

Since the case of Cash v. Whitworth, 13 La.Ann. 401 (1858), it has been unlawful to exercise the levee appropriation power for the purpose of land reclamation rather than for flood control. Relying on *Cash v. Whitworth,* the Louisiana Supreme Court stated in John Chaffe & Sons v. Trezevant, 38 La.Ann. 746, 751 (1886):

It has never, heretofore, been deemed a part of the levee system that a proprietor was bound to yield a part of his soil for the construction of levees for the purpose of reclaiming overflowed lands, where it was not originally necessary to prevent his land from inundation, and when he is not benefited by them. If this was permitted, money would be taken from him without an equivalent, to enrich others.

Thus far in its much-litigated history the Louisiana riparian servitude has successfully withstood constitutional attacks,[5] but since 1856 when the state

---

5. Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896); Wolfe v. Hurley, 46 F.2d 515 (W.D.La.1930) (three-judge court), aff'd per curiam, 283 U.S. 801, 51 S.Ct. 493, 75 L.Ed. 1423 (1931).

supreme court justified the servitude on the basis of the state's police power,[6] there has been a continuous effort to define and delimit the appropriation power. Today, whether the so-called levee servitude is justified on the theory of the police power or the theory that the state has reserved rights in all riparian land,[7] there are three requirements, as seen in *Grayson, supra,* that must be fulfilled prior to the appropriation. Here requirements one and two are satisfied. The first is that the land have the requisite riparian character,[8] which it does, and the second is that the property to be appropriated must be "within [the] range of the reasonable necessities of the situation" [9] which calls for a very subjective evaluation depending closely on the proximity of the riparian land to its stream or river. In this case the new reservoir canal will be adjacent to Bayou Folse. The third requirement, which might be considered as part of the second, was set forth in *A. K. Roy, Inc.,*[10] and has here proven to be the stumbling block for defendants. This final test would require not only that the new reservoir canal be necessary for flood control in general but that it primarily aid in the flood control of Bayou Folse.

A careful examination of the "Work Plan for Watershed Protection, Flood Prevention and Agricultural Water Management, Bayou Folse Watershed" (dated March, 1962), pursuant to which plan the new reservoir canal is being built, indicates that the overall purpose of the plan, including the new drainage canal, is land reclamation. It is true that flood control is the essence of the Work Plan and the new canal, but the primary cause of the flooding which the new canal will seek to alleviate is due to extremely high rainfalls (the average is 63 inches per year) and the swamp and marsh char-

acter of the land, much of which is below sea level.

An incidental or secondary purpose to be served by the new reservoir canal will be to help prevent flooding from Bayou Folse when the levee along the Bayou is overtopped. In the past this has occurred on an average of every eight years, but, according to the Work Plan, it is now estimated that the new improved levee will reduce flooding by Bayou Folse to once in every 50 years. The principle purpose for which the new canal is necessary is clearly related to reclaiming or improving the low-lying land within Sub-Drainage District No. 3 so that it can be utilized profitably for crops and pasturage. The result will be a stronger local economy and the alleviation of serious health hazards that accompany inundated land. Whether defendants consider the objectives set forth in the Work Plan as being related to watershed rather than land reclamation is of no great consequence. The important determination is that the new reservoir canal will be necessary primarily to prevent flooding caused not by the Bayou but by the inability of this land to drain itself because of heavy subtropical precipitation and its natural topographical features.

Should defendants be permitted to invoke the riparian servitude in this situation, where there has long been a system of levees, would be to improperly broaden the powers of appropriation. It would allow political subdivisions to take private property without just compensation for improvements only indirectly related to the flood prevention of the river or stream to which the riparian land is contiguous. *See generally* A. K. Roy, Inc. v. Board of Commissioners, 237 La. 541, 111 So.2d 765, 768 (1959); Hebert v. T. L. James & Co., 224 La. 498, 70 So.2d

6. Dubose v. Levee Commissioners, 11 La. Ann. 165 (1856).

7. Dickson v. Board of Commissioners, 210 La. 121, 26 So.2d 474 (1946), noted in 21 Tul.L.Rev. 496 (1947).

8. Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749 (1956); *see* Board

of Commissioners v. Baron, 236 La. 846, 109 So.2d 441 (1959).

9. Wolfe v. Hurley, 46 F.2d 515, 522 (W. D.La.1930).

10. A. K. Roy, Inc. v. Board of Commissioners, 237 La. 541, 111 So.2d 765 (1959).

102 (1953); Louisiana Power & Light Co. v. Louisiana Department of Highways, 142 So.2d 807, 809 (La.App. 1st Cir. 1962); Peart v. State of Louisiana, Department of Highways, 125 So.2d 673, 676 (La.App.2d Cir. 1960).

For the reasons assigned above, the motion by plaintiff United Gas Pipe Line Company for summary judgment against defendants Lafourche Parish Police Jury and Drainage District No. 12 of Lafourche Parish should be and is hereby granted.