**TENNESSEE GAS TRANSMISSION COMPANY, Plaintiff,**

v.

**GREATER LAFOURCHE PORT COM-MISSION, Defendant.**

Civ. A. No. 15892.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 20, 1968.

Burt W. Sperry, Monroe, La., for plaintiff.

Stanley L. Perry, Galliano, La., for defendant.

## MEMORANDUM OPINION

BOYLE, District Judge:

In this diversity action, Tennessee Gas Transmission Company (hereafter "Tennessee"), a Delaware corporation with its principal office in Texas, seeks a money judgment against the Greater Lafourche Port Commission (hereafter "Commission") on a claim arising out of the lowering by Tennessee of its pipeline which traverses Bayou Lafourche, at what is referred to as Belle Pass in Lafourche Parish, Louisiana, and adjacent lands, some of which were and are owned by Louisiana Land and Exploration Company (hereafter "L. L. & E.").

Beginning in 1955, it was necessary that Tennessee, in order to construct that section of the pipeline involved in this litigation, secure authorizations from certain governmental entities, both federal and state, as well as a right-of-way through lands owned by L. L. & E.

Consequently, on December 16, 1955, Tennessee purchased from the State of Louisiana, acting through its Governor, a right-of-way over and through land and in streams, gulfs, bays and waterways in various Parishes, including Lafourche Parish, under the jurisdiction, supervision and control of any agencies of the State, for the construction of its pipeline. Then in February 1956, Tennessee sought and procured authorization from the State of Louisiana Department of Public Works [1] to lay the aforementioned pipeline within the bed of Belle Pass. This authorization [2] contained the following paragraph:

"Should changes in the locations or sections of the existing channels, or in the generally prevailing conditions in the vicinity, be required in the future, in the public interest, the applicant shall make such changes in the project concerned, or in the arrangement thereof, as may be necessary to satisfactorily meet the situation, and shall bear the cost thereof."

Also in February 1956, Tennessee purchased a "permit" from L. L. & E., granting to it the right to construct its pipeline on and through land belonging to the grantor.

On March 15, 1956, the United States Army Corps of Engineers, having already received notice from the Lafourche Parish Police Jury that that body would interpose no objection to the project, granted Tennessee a permit "authorizing installation and maintenance of a 6-inch gas pipe line under and across Belle Pass (Bayou Lafourche) * * * in Lafourche Parish." This permit was granted subject to several listed conditions, two of which read:

"(d) That if inspections or any other operations by the United States are necessary in the interest of navigation, all expenses connected therewith shall be borne by the permittee.

"(f) That if future operations by the United States require an alteration in the position of the structure or work herein authorized * * * the owner will be required * * * to remove or alter the structural work * * * without expense to the United States * * *. No claim shall be made against the United States on

---

1. The Department of Public Works of the State of Louisiana is charged with the exercise of all administrative functions of the State in relation to the State's inland waterways (R.S. 38:2 et seq.), subject to the predominant authority and jurisdiction of the United States over such waterways (R.S. 38:3). Additionally, the Department is required to render engineering, economic and other advisory services to port and terminal districts (R.S. 38:2).

2. It is not contended here that such authorization was not needed.

account of any such removal or alteration."

In 1960 by Act of the Louisiana Legislature[3] the Commission was created. Commencing in 1962, the Commission embarked upon an extensive project, the object of which was to build a new port facility, consisting of, inter alia, docks, warehouses and access roads. The plans for this project required the widening and deepening of Belle Pass including the area where Tennessee's pipeline crossed. The cost of the entire project was to be in excess of $5,000,000, part of which amount was provided by a grant from an agency of the Federal Government and the remaining funds were acquired from various agencies of the State of Louisiana and through a local bond issue. The plaintiff has stipulated that the port improvement project and the widening and deepening of Belle Pass necessitated thereby were undertaken "in the public interest."

In August 1963, the Commission obtained a servitude covering the property belonging to L. L. & E. necessary to completion of the project. However, in granting this servitude in favor of the Commission, L. L. & E. made it subject to the servitude it had granted to Tennessee in 1956. Then in November 1963, the Commission advised Tennessee of its intention to deepen and widen Belle Pass and called upon Tennessee to lower its pipeline. A dispute arose as to who would bear the expense of lowering that part of the pipeline which lay outside of the channel. Plaintiff concedes that it must bear the expense of lowering that section of the pipeline lying in the channel. Since this dispute threatened to delay the project, the Commission passed a resolution, dated March 10, 1964, authorizing its president to

contact Tennessee "and formally request that said company undergo the full expense of said lowering, but expressly reserving to said company, any and all right or rights of re-imbursement from the Greater Lafourche Port Commission, which said company may be entitled to by law * * *."

Pursuant to this resolution the president of the Commission, by a letter dated March 19, 1964, requested that Tennessee lower the line at its own expense and stated:

"It is clearly understood and agreed between the Greater Lafourche Port Commission and the Tennessee Gas Pipe Line Company that in lowering said pipeline at its own expense, Tennessee Gas will not in any way prejudice any legal right or rights it may have against the Greater Lafourche Port Commission, for subsequent re-imbursement of any portion of said expense, as the law may later determine."

Sometime thereafter, Tennessee lowered its line and on September 22, 1964 sent the Commission a bill for $35,208.74 representing the cost of lowering that part of the pipeline lying outside of the channel.[4] Upon receipt of the bill, the Commission informed Tennessee that it would pay none of the expense of lowering the line. As a result of that refusal, Tennessee filed this suit.

The Commission having unsuccessfully challenged the jurisdiction of this Court,[5] the case was tried on the merits on a former day and the Court now renders judgment in favor of defendant and against the plaintiff, dismissing this suit at plaintiff's cost.

The facts giving rise to this suit have been fully recited hereinbefore and con-

---

3. Act 222 of 1960; R.S. 34:1651. See the Memorandum Order of this Court, dated August 19, 1968, denying defendant's motion to dismiss.

4. The total cost of the lowering of the line was $54,874.75, according to Tennessee. However, since, by its computation, 35.-838% of the affected pipe lay in the chan-

nel (248 feet of a total of 692 feet), it billed the Commission for only $35,208.74, conceding that it must itself bear the balance of $19,666.01.

5. See the Memorandum Order of this Court, dated August 19, 1968, denying defendant's motion to dismiss.

cerning them there was no real dispute. The outcome of this litigation depends upon the answers to two more or less related inquiries, namely:

Did Tennessee acquire any right to compensation for lowering that portion of its line lying outside the channel by virtue of the resolution of the Commission of March 10, 1964 and the letter of its president to Tennessee dated March 19, 1964?

Did the Commission's requirement that Tennessee lower that part of its line lying within the channel, which necessitated the lowering of a portion of the line lying outside the channel, constitute a "taking" without just compensation to the extent of the expense incurred by Tennessee in lowering the line lying outside the channel?

We answer both questions in the negative.

■ The plain meaning of the language of the resolution and the letter of the Commission's president make plaintiff's position that the Commission agreed to reimburse it for the costs incurred in lowering the line outside of the channel untenable. The sole purpose of the Commission's action was to prevent the delay in the dredging operations which would have occurred had Tennessee awaited final determination of its dispute with the Commission before lowering its line. The sole result of the Commission's action was to guarantee to Tennessee that in complying with the request to lower its line it would waive no rights it had or *may* have to reimbursement from the Commission. The resolution and subsequent letter created no rights, it simply preserved the legal status quo pending a compromise or judicial determination of the dispute.

Plaintiff's contention that the Commission has expropriated its pipeline right-of-way lying outside the channel and is therefore indebted to it for reimbursement is likewise without merit.

■ The terms of the permits or authorizations constitute the law as between the parties in the absence of statutes regulating the conditions on which such permits or authorizations may be granted. The authorization granted to Tennessee by the Department of Public Works of the State of Louisiana was subject to the condition quoted hereinbefore. This condition was quite explicit in its requirement that Tennessee at its own expense make such changes as might be required to meet future changes in the location of existing channels or in the generally prevailing conditions, when such changes are undertaken in the public interest. The changes in the channel made in connection with the port improvement project, admittedly enuring to the public interest, fall within the scope of those changes which, under the terms of the authorization, required Tennessee to alter its facilities in conformity therewith at its own expense. Furthermore, there is nothing in that condition to support plaintiff's argument that it is required at its own expense to lower only that portion of the pipeline lying within the channel. A similar contention was raised in United States v. 597.75 Acres of Land, Etc., 241 F.Supp. 796 (W.D.La.1965), a case involving the issue of whether or not the United States was responsible to the holder of a Corps of Engineer's permit for the expenses incurred by the permittee-defendant in relocating its pipeline on lands adjacent to the waterway which the pipeline crossed. The conditions upon which the pipeline permit was granted appear to be identical to the conditions imposed upon Tennessee by the Corps of Engineers and not significantly different from the condition imposed by the Department of Public Works. The Court there rejected, and we think correctly, the permittee's contention that it was entitled to recover the cost of relocating the section of line lying without the channel in the following language:

"The permits under which the pipeline crossings were made recognize and require that the relocation be made at defendants' expense, and, in the opinion of this Court, a reasonable

interpretation thereof would also require that such incidental work on adjoining lands as is necessary to accomplish this purpose be effected at defendants' expense."

This same Court had stated earlier in its opinion that the argument that it would be very costly to the permittee to lower its line was not persuasive.

■ Accordingly, since no reason has been advanced why the Commission should not be a beneficiary of the condition imposed in and for the public interest in the authorization issued by the Department of Public Works, we hold that the defendant, acting in the public interest, required the plaintiff to do no more than what it agreed to do as a pre-condition to obtaining the State's permission to cross Belle Pass and thus owes the plaintiff nothing.

■ Although not crucial to our decision, we have noted the conditions contained in the permit issued by the Corps of Engineers, relative to the obligations of the permittee should operations by the United States require alterations in the pipeline. In our view the improvement project which required the lowering of plaintiff's line could fairly be termed an "operation of the United States" in light of the substantial federal grant made in aid thereof. This being the case, the defendant might also be considered a beneficiary of the conditions of that permit providing that the permittee bears the expense of required alterations.

The cases cited by plaintiff in support of its claim that defendant's refusal to reimburse it constituted a "taking" without just or adequate compensation are distinguishable.

In Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090, 1091 (1935) a state highway department, purportedly acting under authority of a state statute, sought to construct new highways across a pipeline company's pipeline right-of-way (which pipeline right-of-way was not located on or across any previously existing highway right-of-way) without compensating the pipeline company. The Court in effect held that this would constitute a taking of private property for public use without compensation in violation of the Fourteenth Amendment. This is a far cry from the situation in the instant case in that plaintiff here sought to cross a previously existing navigable waterway and, as a condition of the permission granted, was required to agree to do just what it was later requested to do. The cited case might control had the Commission attempted to dredge a completely new channel across a right-of-way previously obtained by Tennessee from a private landowner without compensating Tennessee.

Plaintiff also relies on Department of Highways, State of Louisiana v. United Gas Pipe Line Co., 258 F.2d 359 (5th Cir., 1958). In that case a permit was issued by the Louisiana Department of Highways to a pipeline company, authorizing construction of a pipeline through a highway right-of-way, on the condition that the permittee make, at its own expense, "such changes, additions, repairs, relocations and removal as may at any time be considered necesssary to permit the relocation, reconstruction, widening and maintaining of the highway * *." The permit further provided that "the rights and privileges granted herein * * * shall not be construed to be any broader than those expressly set out in Acts of the Legislature of the State of Louisiana, regardless of the language used in this permit * * *." The statute referred to provided that:

"No installation may be made except upon the explicit condition that the owner thereof shall, at no cost to the department, remove or relocate the facility when that is necessary to permit the widening, relocation, or other improvement of the highway * * *."

The Court, finding that the permit in requiring "additions" was broader than the statute, held that the pipeline company could not be required at its own expense, "to *add* protective facilities to

its pipe line" at a point, located outside of the original highway bed, where a relocated highway intersected the previously existing pipeline.

In the instant case we have been cited to no statute restricting the conditions upon which the Department of Public Works may grant authorization to a pipeline company to cross navigable waters. Hence, we are not confronted with an overreaching of a statute by a permit. Additionally, we are not involved with a relocation of a waterway (i. e. a new channel) over a previously existing pipeline. Instead, we are confronted only with the widening and deepening of an already existing channel which modifications clearly lie within the scope of the condition to granting of the authorization by the Department of Public Works.

In Arkansas Louisiana Gas Company v. Louisiana Department of Highways, 104 So.2d 204 (La.App., 1958) the plaintiff pipeline owner claimed reimbursement of the expenses it incurred in complying with the request of the defendant, the Louisiana Department of Highways, that it lower its pipeline over which a new highway, lying adjacent to, but outside of, the original highway right-of-way, was being constructed. The Court, noting that no claim was being made for the cost of relocating that part of the line which lay within the confines of the original right-of-way, held that the plaintiff was entitled to recover the expense of relocating that section of the line over which the new highway was constructed. This case is distinguishable from the present case for practically the same reason as the *United Gas* case discussed just above, with the exception that there was no issue regarding a conflict of a permit with a statute.

Finally, Tennessee points to the fact that the Commission obtained a servitude from L. L. & E. in connection with the dredging of Belle Pass, but did not contract with it relative to the lowering of its line in spite of the fact that L. L. & E. specifically declared and reserved Tennessee's right-of-way in granting the servitude in favor of the Commission. Tennessee takes this to be a recognition, in effect, of its rights against the Commission. However, any initial appeal this observation may have vanishes on close inspection. L. L. & E. and Tennessee stand in completely different positions with respect to the Commission and its project. L. L. & E., so far as the record reveals, holds no permits authorizing construction of any facilities across or under the bed of Belle Pass. Consequently, L. L. & E. is not bound by any of the conditions attendant to such a permit relative to modification of any such installation. L. L. & E. is simply a riparian landowner, the rights of which differ vastly with those of Tennessee, a permittee. We hasten to add, however, that had the Commission sought to dredge a new channel across a pipeline owned by Tennessee, but constructed on a right-of-way obtained from L. L. & E., and had Tennessee not been bound by the conditions of a permit as it was, then Tennessee's rights would have been on a parity with those of L. L. & E. and the result of this litigation would have been different.

■ The provision that the grant by L. L. & E. to the Commission was subject to the servitude which L. L. & E. granted to Tennessee in 1956, appearing in L. L. & E.'s 1963 grant to the Commission, merely put the Commission on notice that Tennessee, as far as L. L. & E. was concerned, had a right to maintain a line in the area covered by the grant to Tennessee and protected L. L. & E. from any claim against it by Tennessee that L. L. & E. violated its contract with Tennessee. The provision relegated Tennessee to whatever rights it may have against the Commission as a result of the latter's use of the privileges granted it by L. L. & E. Beyond putting the Commission on notice of its contract with Tennessee, L. L. & E. washed its hands of the matter. And the conditions imposed in the permit which allowed construction of the line across Bayou Lafourche by Tennessee washed out Tennessee's claim herein against the

Commission. Finally, L. L. & E., by putting the Commission on notice that it had a contract with Tennessee, could not create a right in favor of Tennessee against the Commission where, as we hold, none otherwise exists.

Accordingly, it is ordered that judgment be entered in favor of defendant and against plaintiff, dismissing this suit at plaintiff's costs.

This memorandum opinion shall constitute the Court's findings of fact and conclusions of law.