**UNITED STATES of America**

**v.**

**597.75 ACRES OF LAND, MORE OR LESS, Situate IN ST. MARTIN PARISH, STATE OF LOUISIANA, and Everett S. Welch, et al.**

**Civ. A. No. 10373.**

United States District Court
W. D. Louisiana,
Lafayette Division.
May 20, 1965.

Edward L. Shaheen, U. S. Atty., and D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., Philip Zeidner and Anthony R. Sluga, Attorneys, Department of Justice, Washington, D. C., for plaintiff.

Clarence Frost, New Orleans, La., for Texas Pipe Line Co. and Texaco, Inc.

PUTNAM, District Judge.

This condemnation suit was filed on July 9, 1964 by the United States at the request of the Secretary of the Army. Texaco, Inc. and The Texas Pipe Line Company were served with notice of this suit in accordance with the provisions of

Rule 71A, Federal Rules of Civil Procedure. This rule provides, inter alia, that all persons having an interest in properties affected by a condemnation action instituted by the United States should be served with notice thereof. The interests of Texaco, Inc. and The Texas Pipe Line Company were derived from certain instruments of public record wherein they were mineral lessees or assignees as to the minerals under the lands comprising Tracts Nos. 321E–1 and 322E–3 upon which the United States expropriated dredging easements. The defendants then amended their Notices of Appearance claiming large sums of money to cover the costs of lowering their pipelines in accordance with the direction of the acquiring agency of the United States.

The Notices of Appearance filed by each defendant did not set forth claims for specific sums for just compensation. Independently of the condemnation suit and under the provisions of Section 10, of the Act of Congress approved March 3, 1899, entitled, "An Act Making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes", 30 Stat. 1121, the District Engineer, U.S. Army Engineer District, New Orleans, Louisiana, issued notices to the defendants to lower their pipelines in the bed of the navigable river so as to accommodate the proposed improvement to the navigation channel.

The United States then filed a Motion to Dismiss the defendants from the condemnation suit on the grounds neither defendant had a compensable interest in that the estates taken for public use were taken subject to the existing easements for pipelines.

Defendants' pipelines crossed the navigation channel prior to the institution of the condemnation suit under authority of permits issued by the acquiring agency pursuant to its authority for administering the public rights of navigation in the Atchafalaya River. In each of these permits it is clearly provided that if future operations by the United States required alteration in the position of the structure or work authorized, the owners would, without expense to the United States, remove or reconstruct the structures without claim to damages or right to compensation against the United States.

Despite the waiver of compensation and damages in the crossing permits, the defendants claimed that pipe line rights-of-way of public record which they obtained from the State of Louisiana, the Atchafalaya Basin Levee District and the A. Wilberts' Sons Lumber and Shingle Company, on adjoining riparian lands, were in effect expropriated even though the Declaration of Taking filed in this condemnation suit stated the dredging easements were taken subject to existing easements for pipelines. The "subject to" phrase in the Declaration of Taking can be given no other interpretation except that the servitudes of the defendants were not being expropriated. New York Telephone Company v. United States, 136 F.2d 87, 88 (C.A. 2, 1943).

It is the basic principle of condemnation law that when an estate is condemned in land, all persons possessing any interest in the land, legal or equitable, may be parties defendant in the proceeding. Swanson et al. v. United States et al., 156 F.2d 442 (9 Cir. 1946), United States v. Block, 160 F.2d 604 (9 Cir. 1947). Considering defendants' interests of public record consisting of pipeline servitudes and mineral interests, they were properly made parties and served with notice of the condemnation suit, but informing them of the condemnation suit by serving notices does not entitle them to compensation for interests not taken, and the fact that such interests are not taken requires that, as to the servitudes or easements on adjoining riparian lands, the government refrain from disturbing defendants in the exercise of such rights.

The dredging easements condemned by the United States were in aid of flood control purposes. Control of floods in navigable rivers is of itself con-

trol of navigation. United States v. West Virginia Power Company et al., 56 F.Supp. 298 (S.D.W.Va.1944). Accordingly, no state, subdivision thereof or individual citizen may grant any servitude which will hinder the United States through its proper agencies from making necessary works in navigable streams to control navigation, when the adjoining real property is not taken or disturbed.

■ The arguments of the defendants that compliance with the order of the District Engineer to lower the pipelines will cause defendants to make a very large expenditure in money are not persuasive. Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523 (1907); Louisville Bridge Co. v. United States, 242 U.S. 409, 37 S.Ct. 158, 61 L. Ed. 395 (1916).

■ There is nothing novel or unconstitutional in the requirement that the defendants relocate pipelines they constructed in and across the bed of a navigable river. The right of free unobstructed navigation is of paramount interest to the welfare of the citizens of the United States. Lewis Blue Point Oyster Cultivation Co. v. Briggs, 229 U.S. 82, 33 S.Ct. 679, 57 L.Ed. 1083 (1913), United States v. Chicago, M., St. P. & P. R. Co., 312 U.S. 592, 599, 61 S.Ct. 772, 85 L.Ed. 1964 (1941). The permits under which the pipeline crossings were made recognize and require that the relocation be made at defendants' expense, and, in the opinion of this Court, a reasonable interpretation thereof would also require that such incidental work on adjoining lands as is necessary to accomplish this purpose be effected at defendants' expense.

[8] Based upon the facts, it appears that the claims of The Texas Pipe Line Company and Texaco, Inc. are in effect counterclaims against the United States. Suit cannot be brought against the United States without its consent expressed through an Act of Congress, and whether it be attempted in the form of an original action, a set-off or a counterclaim, is immaterial. Nassau Smelting & Refining Works, Ltd. v. United States,

266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190 (1924).

■ There is no question that this Court has proper jurisdiction in this matter. The fact that the United States has invoked the jurisdiction of the courts does not waive its immunity from suit. The rule is firmly established that "the United States, as sovereign, is immune from suit save as it consents to be sued, * * * and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); see also United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); State of Minnesota v. United States, 305 U.S. 382, 387, 59 S.Ct. 292, 83 L.Ed. 235 (1939); United States v. 534.7 Acres of Land, etc., 157 F.2d 828 (C.A. 5, 1946); United States ex rel. and for use of Tennessee Valley Authority v. Lacy, 116 F. Supp. 15 (N.S.Ala.M.D.1953).

But, as we pointed out in United States v. State of Louisiana, 229 F.Supp. 14, p. 14 (W.D.La.1964):

"The cases are legion to the effect that where the United States, as a suitor, exercises its right to invoke the jurisdiction of the federal courts, it is subject to the same rules and is bound by the judgments and orders of the court to the same extent as any private party litigant. It takes the position of a private suitor so far as to agree, by implication at least, that complete justice may be done with regard to the subject matter, so long as public policy or the purpose of federal statutes is not thwarted. United States v. The Thekla, 266 U. S. 328, 45 S.Ct. 112, 69 L.Ed. 313 (1924); Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938); United States v. Martin, 267 F.2d 764 (10 Cir. 1959).

"In the very early case of Carr v. United States, 98 U.S. 433, 25 L.Ed. 209 (1879), the Supreme Court drew the distinction between suits brought

800

by the government, where the aid of the Court was sought to establish or reclaim the sovereign's rights in property, and suits brought by individuals against the government to deprive it of its title. It was pointed out in that decision that in cases falling into the first category, the prior rights of others to the same property will be adjudicated and allowed, and that such adjudication by the Court is binding upon all parties to this suit. See also: 54 Am. Jurisprudence U.S. § 116, p. 627; 91 C.J.S. United States § 183, p. 420; Wright, Federal Courts, § 22, p. 60."

■ The Texas Pipe Line Company and Texaco, Inc., are accordingly dismissed from this proceeding. They have received notice of the proceedings as required and are not entitled to compensation as their servitudes are not affected by the estates condemned for dredging purposes and the Judgment of Taking will so declare.

But, in order to insure that the decree sought will not be violated in the exercise of the rights acquired by the Government thereunder, we retain jurisdiction over the claims now put forward by defendants until completion of the Government's operations carried on pursuant to the judgment contemplated by the prayer of the petition filed herein. We deem this reservation one necessary in aid of our jurisdiction in the premises under the circumstances found here. U. S. v. State of Louisiana et al. We wish to add that the Court does not expect that any further proceedings will be made necessary by the work to be undertaken by the Corps of Engineers, who have demonstrated a thorough understanding of the practical problems involved, but feel that this reservation may well prove to be the "ounce of prevention" to eliminate the possibility of a "pound of cure".

A formal decree will be prepared and presented for signature in accordance with local rule 9(e) of this Court, and the views herein expressed.