**TENNECO, INC., Plaintiff-Appellant,**

**v.**

**GREATER LAFOURCHE PORT COMMISSION, Defendant-Appellee.**

**No. 27532.**

United States Court of Appeals, Fifth Circuit.

June 1, 1970.

Rehearing Denied July 7, 1970.

Burt W. Sperry, Monroe, La., for appellant.

Stanley L. Perry, Galliano, La., for appellee.

Peter Monrose, New Orleans, La. (Humble Gas Transmission), B. R. Dickerson, Shreveport, La. (United Gas Pipe Line), Wiley G. Lastrapes, Daniel P. Hurley, Shirley C. Friend, Jr., New Orleans, La. (Texaco, Texas Pipe Line), Jack C. Hardy (Sunoco Gulf Coast Div.), Div., Gen. Atty., Henry Lastrapes (Sun Oil), Chief La. Atty., Beaumont, Tex., amici curiae.

Before WISDOM, SIMPSON, and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

In this *Erie*-bound case we construe a condition attached to a Louisiana Department of Public Works permit for a bayou pipeline crossing. We conclude that the condition does not require the pipeline company to pay for alterations occasioned by the state's encroachment on an adjacent easement that the company had purchased from a private party.

## I.

In 1955, the State of Louisiana,[1] owner of the beds of navigable streams in the state, LSA–R.S. 9:1101, through the Governor and the Register of the State Land Office, LSA–R.S. 41:1173, sold to Tenneco a right of way for a gas pipeline across the bed of Bayou Lafourche at Belle Pass, in Lafourche Parish, Louisiana. Tenneco then purchased a right of way from Louisiana Land and Exploration Company (LL&E) for a

---

1. The Department of Public Works of the State of Louisiana is charged with the exercise of all administrative functions of the State in relation to the State's inland waterways (LSA–R.S. 38:2 et seq.), subject to the dominant authority and jurisdiction of the United States over such waterways (LSA–R.S. 38:3). Additionally, the Department is required to render engineering, economic and other advisory services to port and terminal districts (LSA–R.S. 38:2).

continuation of the pipeline across LL&E's lands adjacent to the bed of the Bayou. On March 15, 1956, the Army Corps of Engineers, having already received notice from the Lafourche Parish Police Jury that that body would interpose no objection to the project, granted the necessary permission for the pipeline to cross the navigable waters of the Bayou. 33 U.S.C. § 403. This permit was subject to the condition "[t]hat if future operations by the United States require an alteration in the position of the structure or work herein authorized", the owner, Tenneco, would remove or alter the structure "without expense to the United States". The Louisiana Department of Public Works, by letter dated February 1, 1956, stated that it had no objection to the proposed crossing.[2] The final paragraph of that letter contained the following language:

> Should changes in the locations or sections of the existing channels, or in the generally prevailing conditions in the vicinity, be required in the future,

in the public interest, the applicant shall make such changes in the project concerned, or in the arrangement thereof, as may be necessary to satisfactorily meet the situation, and shall bear the cost thereof.[3]

Tenneco proceeded to build its pipeline across LL&E's property and across (under) the bed of the Bayou.

In 1962, the Greater Lafourche Port Commission[4] decided to widen and deepen the channel of Bayou Lafourche at Belle Pass as part of a new port facility.[5] The federal government promised and later supplied funds in aid of the project. Since the proposed widening would extend the channel onto LL&E's property, the Port Commission obtained an easement from LL&E subject to existing servitudes including Tenneco's right of way. On the Port Commission's demand, Tenneco lowered its pipeline through both the original channel of the Bayou and that part of the new channel which the Port Commission had dredged on LL&E's property. Tenneco reserved its rights to seek compensation. Tenne-

2. The district court stated that Tenneco had sought the Public Works permit. That specific issue, however, does not appear to have been litigated below. During oral argument on appeal, counsel for Tenneco explicitly denied having applied for the permit and maintained that the Army Corps of Engineers must have forwarded its application to Public Works. The letter from Public Works does begin, "[t]his office is in receipt of a *copy* of your letter *addressed to the District Engineer, Corps of Engineers, New Orleans District*" (emphasis supplied). Because of the view we take of the case, however, we do not find this issue pertinent.

3. Since the controversy hinges largely on this letter, we quote it here in full:
   Gentlemen:
   This office is in receipt of a copy of your letter addressed to the District Engineer, Corps of Engineers, New Orleans District, dated January 20, 1956, together with drawings showing proposed Natural Gas Pipe Line crossings under Belle Pass and canals near Leeville, Lafourche Parish, Louisiana.
   The above request has been examined by Mr. Thurman C. Morgan, District

Engineer for this Department, and no objection is offered to the proposed crossings, provided that they are constructed in accordance with the above mentioned letter and drawings, and provided also that pipe line is installed under Panama Canal to accommodate a − 10.0 M.S.L. channel 100 feet wide; and under Belle Pass to accommodate a − 13.0 M.S.L. channel 125 feet wide. Pipe line to be a minimum of 3 feet below channel bottom.
   Should changes in the locations or sections of the existing channels, or in the generally prevailing conditions in the vicinity, be required in the future, in the public interest, the applicant shall make such changes in the project concerned, or in the arrangement thereof, as may be necessary to satisfactorily meet the situation, and shall bear the cost thereof.
   Yours very truly,
   /s/ Hu B. Myers
   HU B. MYERS
   Chief Engineer

4. Established by statute in 1960, LSA–R.S. 34:1651.

5. The parties have stipulated that the new port facility is "in the public interest".

co now demands from the Port Commission $35,208.74, the cost of lowering its pipeline on the LL&E property, outside the right of way it had purchased from the State. The district court denied relief, Tennessee Gas Transmission Co. v. Greater Lafourche Port Commission, E. D. La. 1968, 293 F.Supp. 1019, and Tenneco appeals.

Tenneco contends that the Public Works letter does not require it to pay the cost of lowering its pipeline outside the original bed of the bayou, and that if it did, the requirement would be expropriation without just compensation. An amicus brief filed by several oil producers and pipeline owners and operators further stresses the constitutional argument. United Gas Pipe Line Company, appearing separately as amicus curiae, maintains that the Department of Public Works had no authority to issue its letter and that the letter's effect can be only advisory. The Port Commission, on the other hand, argues that Tenneco must bear the total cost involved under either the Public Works permit or the condition specified by the Army Corps of Engineers. Because we conclude that a proper construction of the Public Works permit limits its effect to the area within the right of way granted, we need not reach either the constitutional issue or the issue relating to the authority of Public Works. Nor do we find in this case that the Corps's conditions inure to the Port Commission's benefit.

## II.

It is useful, first, to clarify the subject of dispute. Tenneco agrees that it is financially responsible for pipeline alterations necessary to accommodate changes in the channel that are made within the right of way it purchased from the State—that is, changes within the bayou's original boundaries. Tenne-

co objects, however, to paying for those changes occasioned by the channel's encroachment onto LL&E's property and onto Tenneco's easement there.

The pertinent section of the letter from Public Works allocated to Tenneco responsibility for making, at its expense, "changes in the project concerned, or in the arrangement thereof". The significance of this responsibility must turn, therefore, on the scope of that phrase.

The record before us does not contain Tenneco's January 20, 1956, application to the Army Corps of Engineers, to which the letter from Public Works was a response.[6] But the permit issued by the Corps discloses that Tenneco sought permission to "install and maintain a 6-inch gas pipe line under and across Belle Pass (Bayou Lafourche). * * *" Indeed, according to the permit, the Corps had authority only to express "the assent of the Federal Government so far as concerns the public rights of navigation". Thus, Tenneco's application to the Corps and the request before Public Works was not for general permission to construct a pipeline nor even for authorization of that portion of the pipeline on LL&E property adjacent to the bayou, but specifically for authorization of that portion which would cross the navigable waters and bed of the bayou as it then existed. The first two paragraphs of Public Works's responding letter are entirely consistent with this interpretation. Public Works examined Tenneco's "request" to construct "Natural Gas Pipe Line *crossings*". (Emphasis supplied.) It informed tenneco that "no objection is offered to the proposed *crossings*. * * *" (Emphasis supplied.)

Looking at "the project concerned" of the third paragraph, then, in the light of its antecedents in the preceding paragraphs, we find no indication that the letter assigned liability for anything more than future changes in the subject matter of the application—name-

---

6. See paragraph 1 of the letter, note 3 *supra*.

ly, the crossing of the current width of the bayou. This interpretation is consistent with the fact that the framework of consideration was that portion of the pipeline which would cross the bayou as it stood in 1956. The language is not sufficiently explicit to justify extending it to include under "the project concerned" sections of the pipeline which might come within future boundaries of the bayou. Traditionally, in choosing among reasonable meanings of an agreement "an interpretation is preferred which operates more strongly against the party from whom [the words] proceed". Restatement of Contracts § 236(d) (1932). See also Restatement (Second) of Contracts § 232 (Tent. Draft No.    , 19  ); L. Simpson, Handbook of the Law of Contracts § 102 (2d ed. 1965).

Current Louisiana treatment of right of way grants reinforces our reading. The State Land Office requires "permission or clearance" from Public Works only if the "proposed line crosses navigable waters". State of Louisiana, Granting of Rights-of-Way to Corporations or Individuals Rule 7 (1969). A condition analogous to that in Public Works' letter is now incorporated in the right of way grant itself. The boilerplate refers to widening or deepening the streams or water bottoms *"within the right of way herein granted"*. (Emphasis supplied.) Principal responsibility is imposed upon the grantee only for alterations or relocation resulting from "such work." Changes outside the right of way granted, like those involved here, are not mentioned.

The only Louisiana case authority in point further buttresses our conclusion. In Arkansas Louisiana Gas Co. v. Louisiana Department of Highways, 104 So. 2d 204 (La.App.1958), writ. denied, the Louisiana Second Circuit dealt with a statutory provision instituting conditions similar to the arrangement here. The statute said:

> No [pipeline] installation may be made except upon the explicit condition that the owner thereof shall, at no cost to the department, remove or relocate the facility when that is necessary to permit the widening, relocation, or other improvement of the highway, when so ordered by the director.

104 So.2d at 209. The Louisiana court interpreted this provision narrowly. It concluded that the pipeline company had satisfied the condition once it had "borne the cost of compliance with defendant's regulations *within the right-of-way which its facility crossed under the authority of the [original] permit from the Louisiana Highway Commission"*. *Id.* at 210. (Emphasis supplied.) The pipeline company was not required to pay for relocation outside the area covered by the original permit.

■■ By reaching this construction of the letter, we avoid adjudication of the constitutional issue. *See* Haynes v. United States, 1968, 390 U.S. 85, 92, 88 S.Ct. 722, 19 L.Ed.2d 923, 929; Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688, 711 (Brandeis, J., dissenting in part). We recognize of course that the surrender of property rights may be consideration for the grant of something else and that the state police power supports the restriction of some private rights. *See, e.g.,* Edgar A. Levy Leasing Co. v. Siegel, 1922, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595. But Tenneco paid the Governor and State Land Office for its right of way across the bayou. No indication was given in the grant that more consideration might be necessary. Although Public Works may have had regulatory authority[7] to warn

---

7. We say "may have had" because United Gas, as amicus, contests Public Works' authority to do anything but advise the Governor and Register of State Lands at the time of the sale of a right of way. Tenneco, however, seems to admit Public Works' authority at least to the extent of the original boundaries of the bayou. We find it unnecessary to decide the issue.

Tenneco that its pipeline crossing was permissible in 1956 but might not be in the future, we think there is at least a question whether it could constitutionally require that Tenneco also surrender without compensation rights over adjacent private property. *Cf.* Panhandle Eastern Pipe Line Co. v. State Highway Commission, 1935, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090.

■ We quickly dispose of the Port Commission's contention that the conditions in the Army Corps permit redound to its benefit. Condition (f) of the permit refers to an "alteration in the position of the structure or work *herein authorized*".[8] (Emphasis supplied.) As we have already pointed out, the Corps' permit did not authorize that portion of the pipeline on the LL&E property, for no such authorization was required. We find this condition of the permit inapplicable, therefore, without considering other troublesome obstacles the Port Commission must surmount to show that it is entitled to this benefit.[9] We do not read United States v. 597.75 Acres of Land, W.D.La.1965, 241 F.Supp. 796, as necessarily inconsistent with our result. There the district court held simply that an Army permit's imposition of the cost of altering a pipeline within a river bed included "incidental" changes outside the river bed—in other words, changes the pipeline company must make "necessary to accomplish [the]

purpose" of relocation *within* the river bed. *Id.* at 799. The district court retained jurisdiction to ensure that the Government did not further encroach on private rights.

Since the parties have not argued the question of what reimbursement is appropriate, we express no view on that question.

Reversed and remanded for disposition consistent with this opinion.

---

8. The condition states:
   [f] That if future operations by the United States require an alteration in the position of the structure or work herein authorized, or if, in the opinion of the Secretary of the Army, it shall cause unreasonable obstruction to the free navigation of said water, the owner will be required upon due notice from the Secretary of the Army, to remove or alter the structural work or obstructions caused thereby without expense to the United States, so as to render navigation reasonably free, easy, and unobstructed. * * *

9. For example, the Army Corps permit requires only that the work be done "without expense to the United States". Thus the Port Commission must argue that its

expense amounted to an expense of the United States because the federal government supplied part of its funds. Similarly, the condition refers to "operations by the United States". The Port Commission must therefore argue that because it received federal funding, its activities are operations of the United States.

In its brief on appeal, the Port Commission does not rely on another condition of the Army Corps permit mentioned by the court below, "[t]hat if inspections or any other operations by the United States are necessary in the interest of navigation, all expenses connected therewith shall be borne by the permittee". The condition does not appear applicable to the problem here.